NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MAUREEN JONES,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Civil Action No. 16-04476 (SDW)

**OPINION**

January 8, 2018

**WIGENTON,** District Judge.

Before this Court is Plaintiff Maureen Jones' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Plaintiff appeals Administrative Law Judge Richard West's ("ALJ West") denial of her claim for disability insurance benefits, period of disability, and supplemental security income under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ West's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

Plaintiff filed Title II and Title XVI applications for a period of disability, disability insurance benefits, and supplemental security income on November 21, 2012. (Administrative Record 9, 245-54) [hereinafter Tr.]. She alleged disability beginning June 1, 2012, due to Type II diabetes, dermatitis, high blood pressure, and bronchitis. (Tr. 102.) Plaintiff's claims were denied on February 28, 2013, and again on reconsideration on July 23, 2013. (Tr. 152-67.) On September 13, 2013, Plaintiff requested a hearing before an administrative law judge. (Tr. 98-99, 168-72.) Plaintiff appeared for and testified at an administrative hearing before ALJ West on August 27, 2014, in Newark, New Jersey. (Tr. 45-96.) Subsequently, ALJ West submitted interrogatories to Vocational Expert Rocco J. Meola ("VE Meola"). (Tr. 359-366.) Upon receiving VE Meola's responses to ALJ West's interrogatories, Plaintiff requested a supplemental hearing. (Tr. 378.) Both Plaintiff and VE Meola appeared for and testified at a supplemental hearing on February 6, 2015. (Tr. 26-44.) On March 23, 2015, ALJ West concluded that Plaintiff was not disabled under §§ 216(i), 223(d), or 1614(a)(3)(A) of the Act, and denied her applications. (Tr. 10, 19.) On May 20, 2016, the Appeals Council of the Social Security Administration denied Plaintiff's request for review, making ALJ West's decision the Commissioner's final decision. (Tr. 1-4.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was forty-six years old on the alleged onset date of her disability in 2012. (Tr. 17.) She is a high school graduate. (Tr. 53.) She previously worked as a food preparer, housekeeper, machine operator, pharmacy assistant, baggage handler, assembly-line worker, and

2

data entry clerk. (Tr. 53-61, 283, 301, 369.) Plaintiff was last employed as a data entry clerk in December 2008. (Tr. 53-54, 283).

### 2. Medical History

The record demonstrates that numerous practitioners examined, consulted, and treated Plaintiff for physical medical issues associated with her disability claim. From 2004 through 2011, Plaintiff had routine appointments at Total Support Medical Group, P.C. for checkups, annual mammograms, and to request refills of her medication. (Tr. 420-81.) From 2012 through 2014, Plaintiff regularly met with Dr. Chidi Anukwuem, M.D. ("Dr. Anukwuem"), primarily to manage her diabetes and hypertension. (Tr. 554-70, 583-627, 644-704.) Dr. Anukwuem's progress notes reflect that Plaintiff has had diabetes since 1983, and hypertension since 2008. (Tr. 583) As of November 2012, Plaintiff was prescribed the following medications: combigan solution and lantanoprost (eye drops), enalapril maleate, glimepiride, lantus, metformin hydrochloride, simvastatin, taclonex topical ointment. (Tr. 554-55.)

Following complaints of numbness in her right thumb, Plaintiff was referred to Jersey Rehab for an electrodiagnostic test in September 2004. (Tr. 474-75.) The testing was consistent with right median neuropathy at the wrist, which "correlates clinically with a right carpal tunnel syndrome." (Tr. 475.) There was no evidence of cervical radiculopathy, peripheral polyneuropathy, myopathy, or plexopathy. (*Id*.) Carpal tunnel splints, vitamin B6, anti-inflammatory medication, and physical therapy for wrist extensor strengthening were recommended. (*Id*.)

From 2003 through 2013, Plaintiff was also under the care of podiatrist, Dr. Gerald Jones, DPM ("Dr. Jones"). (Tr. 382-413, 571-76.) In 2003, Plaintiff had a bunionectomy on her left foot. (Tr. 410-13.) In 2007, she had bilateral foot surgery following a diagnosis of hammer toes, hallux

3

malleus, bunion, hyperkeratosis and metatarsalgia. (Tr. 379-81, 391.) Dr. Patricia Choi, M.D.'s post-surgery radiological report noted that Plaintiff had "good anatomic alignment." (Tr. 401.) In his Disability Certificate, dated July 16, 2007, Dr. Jones indicated that Plaintiff was incapacitated from May 25, 2007 through July 27, 2007, but that she could return to work on July 30, 2007. (Tr. 398.) On March 7, 2011, Dr. Muyiwa Okuribido, DPM prescribed Lyrica and ordered x-rays of Plaintiff's feet following complaints of: a sore on her large, left toe; "off and on" sharp pains in her feet; and burning, throbbing, and fatigue in her feet when she walks. (Tr. 500.) However, a subsequent radiological report from East Orange General Hospital's Diagnostic Imaging Department noted "[n]o acute findings." (Tr. 494.) In November 2014, Plaintiff had a lesion excised from her left foot. (Tr. 705.)

In 2012, Dr. Kimberly Davis-Brown, O.D. ("Dr. Davis-Brown") diagnosed Plaintiff with open-angle glaucoma. (Tr. 537-49.) However, on November 13, 2012, she observed that Plaintiff had "[n]o complaints . . . of physical ocular symptoms[,]" was "[n]ot experiencing routine headaches or double vision. . . [and she had] [n]o reports of visual floaters or light flashes. In addition, [she was] not experiencing blurry or uncomfortable vision." (Tr. 537.) Dr. Davis-Brown referred Plaintiff to Dr. Ceaser G. Pitta, M.D. ("Dr. Pitta") of Vitreo Retinal Associates. (Tr. 482.) In April 2013, Dr. Pitta diagnosed Plaintiff with cystoid macula edema, diabetic retinopathy, and background diabetic macular edema, but indicated that Plaintiff did not have any limitations on her ability to do work-related activities. (Tr. 628-30.) In May 2013, Dr. Pitta indicated that Plaintiff's visual acuity was stable at 20/25 and her retinopathy was stable. (Tr. 635.) Although Plaintiff presented with "significant[,] cloudy[,] blurry vision located in OS that has been occurring intermittently for a few days . . . ." in August 2014, Dr. Pitta noted that Plaintiff's vision was stable

and that her "condition gets better with blinking and gets worse with high sugar[.]" (Tr. 642.) Plaintiff underwent laser eye surgeries on January 13, 2015 and January 20, 2015. (Tr. 710-18.)

### 3. Function Report

Plaintiff completed a function report on December 10, 2012. She indicated that she lives alone. (Tr. 275.) Her daily activities include praying, showering, testing her blood sugar, making breakfast, and grooming herself. (Tr. 275.) On good days, she goes outside, but on bad days, she does not go out, cook, or clean. (*Id.*) She does not require reminders to take care of her personal needs or to take her medication. (Tr. 276.) She prepares "complete meals" for herself "daily." (Tr. 277.) She spends 30 minutes a day on her household chores, including ironing, doing laundry, and cleaning the bathroom, kitchen, and bedroom. (*Id.*) She goes outside every other day, and shops for groceries and household supplies twice a week. (Tr. 278.) She is able to pay bills, handle a savings account, count change, and use a checkbook. (*Id.*) She "often" reads, watches television, and goes to church. (Tr. 278-79.) She is able to pay attention, and follow written and spoken instructions. (Tr. 280.)

Plaintiff indicated that her illnesses, injuries, or conditions affect her ability to walk, climb stairs, stand, and use her hands. (Tr. 279-80.) She tosses in bed at night because her legs tingle. (Tr. 276.) She is not able to carry bags or walk long distances because her hands and legs become numb. (Tr. 280.) She also reported that she does not go out as much as she used to because she is depressed and gets sick. (Tr. 279.) She is able to walk five blocks before needing to stop and rest. (Tr. 280.) She has worn glasses since she was young. (Tr. 281.)

### 4. Hearing Testimony

#### a. August 27, 2014 Hearing

Plaintiff appeared for an administrative hearing before ALJ West on August 27, 2014. (Tr. 45-96.) Plaintiff testified that she is five-foot, three-inches tall and 192 pounds. (Tr. 92.) She takes insulin, as prescribed by Dr. Anukwuem. (Tr. 78-79.) She is careful about taking her medication, and she is "doing the best [she] can" to manage her diet. (Tr. 75.)

High blood sugar affects her head and eyes, and she finds it "hard to sleep." (Tr. 76.) When her blood sugar is either high or low, she sees "floaters[,]" and experiences blurry vision, dizziness, and nausea. (Tr. 71, 77, 85-86.) Once or twice a week, Plaintiff feels lightheaded. (Tr. 69.) When she feels weak, it takes her "a couple of seconds" or a "minute or two" to recover. (Tr. 70.) She lies down twice a day, when her blood sugar fluctuates. (Tr. 80.)

Plaintiff has glaucoma; and in 2011, she had surgery on both of her eyes. (Tr. 87-88.) Approximately twice a week, when her eye pressure is high, she has to close her eyes because they "throb[.]" (Tr. 89.) In addition, she has ringing in her ears. (Tr. 95.) When asked how often she experiences the ringing, Plaintiff initially testified, "not that often[,]" but later described it as "constant[.]" (Tr. 95.)

Plaintiff also has neuropathy in her hands and feet. (Tr. 62-63.) She cannot stand for extended periods of time because she feels pain in the form of tension, stiffness, tingling, burning, and numbness in her feet and toes. (Tr. 61-62.) Generally, she can stand for a maximum of fifteen minutes, and walk about three or four blocks. (Tr. 61, 68.) When asked about her ability to hold things, she stated that she drops things, but "not all the time[.]" (Tr. 64.)

Plaintiff last worked from 2005 to 2008 as a data entry clerk for a shipping company. (Tr. 53.) She primarily sat in front of a computer, reading small print. (Tr. 54-55.) During that time

period, her eyes were "hurting, burning, [and] running[.]" (Tr. 54.) She discovered she had "sugar in [her] eyes" after going to see Dr. Davis-Brown, who then referred her to a retinal doctor. (Tr. 54-55.) Prior to working in shipping, Plaintiff put boxes together as an assembly-line worker. (Tr. 55.) During the course of her employment, she developed carpal tunnel syndrome, which required therapy. (Tr. 55-56.) Plaintiff also worked nine years for Hospi-Tel, a company that manufactured shower curtains for hospitals and prisons, as a machine operator. (Tr. 56.) When she first began working at Hospi-Tel's warehouse, she was a "floater[,]" performing various tasks that required her to sit at machines, stand for more than half day, or lift curtains that weighed 10 to 15 pounds. (Tr. 56-59.) She testified that standing on concrete floors contributed to her foot problems. (Tr. 57.) Prior to that, she also worked as a housekeeper and a food preparer, both of which required her to stand. (Tr. 59-60.)

Plaintiff testified that "with [her blood] sugar the way it is now, [she] just can't [work]." (Tr. 81.) When asked how she dealt with her symptoms in the workplace, Plaintiff testified that she "would back up off the computer" and "close [her] eyes. Or [she] would get up and go to the restroom. Or, [she] would . . . let [her] boss know" that she felt unwell. (Tr. 83.) Closing her eyes provides relief. (Tr. 83.)

With regard to her daily living activities, Plaintiff testified that her neighbor takes her food shopping. (Tr. 89.) Plaintiff arranges for transportation to her doctors' appointments, and takes the bus back home. (Tr. 90.) She is able to walk to the laundromat with a pushcart. (Tr. 90.)

Following the hearing, on September 2, 2014, ALJ West issued interrogatories to VE Meola. (Tr. 359-66.) In his responses, VE Meola listed Plaintiff's prior work experience over the past fifteen years as: data entry (sedentary work), assembler (light work), machine operator

7

(light work), baggage handler (heavy work), and pharmacy assistant (light work). (Tr. 369.) He noted that a hypothetical individual who is Plaintiff's age, has at least a high school education, is able to communicate in English, has Plaintiff's work experience, and who has the residual functional capacity ("RFC") to perform sedentary work, except she can frequently handle and finger, she can frequently read, and she must be able to have five minutes break time per hour, could not perform Plaintiff's past jobs. (Tr. 370.) In addition, he responded that the hypothetical individual could perform the following unskilled occupations: order clerk (sedentary work), document prep worker (sedentary work), and scale operator (sedentary work). (Tr. 371.) Upon receiving a copy of VE Meola's responses to ALJ West's interrogatories, Plaintiff requested a supplemental hearing in the presence of the vocational expert. (Tr. 378.)

### b. February 6, 2015 Hearing

Plaintiff and VE Meola appeared at a supplemental hearing before ALJ West on February 6, 2015. (Tr. 26-44.) Plaintiff testified that she had recently undergone laser eye surgery on both of her eyes on January 13, 2015. (Tr. 28-29.) She required an additional surgical procedure on her left eye on January 20, 2015. (Tr. 31.) Following her surgeries, she could only "see shadow[s]" out of her left eye, but her doctor advised her that the visual impairment would be "short term" and that her vision was "going to come back." (Tr. 34.)

Plaintiff further testified that, with respect to her right eye, she can read large print, but she "can't read small, fine print." (Tr. 36.) In addition, she stated that she could read for 45 minutes at a time before needing to "close [her] eyes and rest [her] eyes because of the strain[.]" (Tr. 36.)

When asked whether an individual's ability to perform unskilled, sedentary work would be affected by her need to rest her eyes for five minutes every forty-five minutes, VE Meola

testified that the limitation would "not . . . have an impact on the person's ability to work." (Tr. 39, 42.) He also stated that this would be the case "[e]ven if they were monocular." (Tr. 42.) However, if the individual required a ten-minute break every forty-five minutes, it would not be acceptable. (Tr. 40.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a

9

reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational

factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

In his March 23, 2015 decision, ALJ West applied the five-step disability test and determined that Plaintiff was not disabled. (Tr. 9-19.) The ALJ's findings are supported by substantial credible evidence. There is no basis for remand or reversal because the ALJ appropriately considered all of Plaintiff's medically-supported complaints as evidenced by her consultative visits and medical treatment.

At step one of the five-step test, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 1, 2012, the alleged disability onset date. (Tr. 12.); *see* 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.* At step two, ALJ West found that Plaintiff has the following severe impairments: diabetes mellitus, hypertension, plantar fasciitis, obesity, dermatitis, status post glaucoma surgery, and diabetic retinopathy. (Tr. 12.); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, ALJ West found that Plaintiff does not have an impairment or combination of impairments that meets the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 12.) As part of his analysis, ALJ West also evaluated Plaintiff's obesity pursuant to the guidelines set forth in SSR 02-1p, including references in the listings contained in sections 1.00Q, 3.00I, and 4.00F.[1] (Tr. 12.)

ALJ West then addressed Plaintiff's RFC under a two-step test. (Tr. 13.) Under this test, the ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 13.) At the second step, he determined that

---

[1] For purposes of this Opinion, this Court will refer to Listings and Sections interchangeably. Listing 1.00Q addresses the effects of obesity, 3.00I addresses asthma, and 4.00F addresses arrhythmias.

13

Plaintiff's claims regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 13.) Upon considering the entire record, ALJ West found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she can only frequently handle and finger, can only frequently read, and must be able to have five minutes break time per hour. (Tr. 12.) Because Plaintiff only challenges ALJ West's findings as to her visual acuity and manipulative abilities, (Pl.'s Br. at 1; Def.'s Br. at 3, n.1.), this opinion will focus on the ALJ's analysis as it pertains to Plaintiff's ability to frequently read, handle, and finger.

ALJ West acknowledged Plaintiff's diabetic retinopathy, laser eye surgeries, and complaints of eye strain, and based his RFC determination on Plaintiff's copious medical records from eye specialists Dr. Davis-Brown, Dr. Pitta, and Dr. Thomas Materna. (Tr. 13-17.) For example, in 2012, Dr. Davis-Brown noted on four separate visits that Plaintiff had "[n]o complaints reported of physical ocular symptoms[,]" was "[n]ot experiencing routine headaches or double vision[,]" and was "not experiencing blurry or uncomfortable vision." (Tr. 537, 540, 543, 548.) The doctor noted Plaintiff had "no vision issues" as of September 2012. Additionally, with corrected vision, she had no difficulties seeing at a distance or close-range. (Tr. 537, 540, 543, 545.) In May 2012, Dr. Pitta found that Plaintiff's vision was 20/25 in both eyes, and that her vision for distance and reading were stable. (Tr. 488.) In May 2013, Dr. Pitta stated that Plaintiff's "retinopathy is stable" and that her "visual acuity [is] stable at 20/25" in both eyes. (Tr. 635.) He instructed her to "watch her hemoglobin A1C as well as her blood sugar[.]" (*Id.*) In February 2013, Dr. Materna noted Plaintiff's complaints of hypertension, diabetes, dermatitis, bronchitis, and glaucoma; and he observed old retinal laser treatment marks, active retinal hemorrhage, and segmental visual field defects consistent with glaucoma. (Tr. 577.) However, Dr. Materna

14

concluded that Plaintiff has "corrected visual acuity 20/25 each eye for distance" and that she is under treatment for glaucoma and diabetic retinal changes. (*Id.*)

Although Plaintiff presented with "significant cloudy[,] blurry vision located in OS that has been occurring intermittently for a few days" in August 2014, Dr. Pitta indicated that her "condition gets better with blinking and gets worse with high sugar[.]" (Tr. 642.) He also noted that there was no trauma and that Plaintiff's vision was stable. (*Id.*) ALJ West's determination that Plaintiff's RFC "was limited such that she would have the opportunity to close her eyes each hour" is supported by Dr. Pitta's notes that her blurry vision improved with blinking, (Tr. 642), and Plaintiff's testimony that closing her eyes provided relief, (Tr. 83). Furthermore, even though she complained of visual impairments following her laser eye surgery, Plaintiff acknowledged that her doctor had advised that her vision was "going to come back." (Tr. 34.) Based on the foregoing, ALJ West's findings are supported by objective medical evidence in the record.

Though Plaintiff alleges that her diabetic neuropathy and carpal tunnel syndrome ("CTS") prevent her from frequently handling and fingering as part of her RFC, this is belied by her limited documented complaints and treatment for CTS. In 2004, Plaintiff complained of numbness in her right thumb and was diagnosed with CTS. (474-75.) Although the administrative record shows regular doctors' visits over the next ten years, there is a noticeable dearth of information about Plaintiff's CTS following her initial diagnosis. For example, Dr. Onyenso's notes from Plaintiff's follow-up exam in August 2011 show that her only active problem was diabetes mellitus. (Tr. 426.) From 2012 through 2014, Plaintiff treated with Dr. Anukwuem, during which time she reported no weakness, numbness, tingling or tremors. (Tr. 554, 557, 560, 565, 583, 588.) She had a normal range of motion, no joint swelling or crepitus, and a normal motor system. (Tr. 555, 558, 561, 584, 589.) Although Plaintiff complained of severe bilateral hand pain lasting for 2 days on

15

November 21, 2012, (Tr. 557), during a follow-up visit on November 26, 2012, Plaintiff's only complaint was shortness of breath, (Tr. 560). Therefore, the ALJ's findings that Plaintiff "can only frequently handle and finger" are supported by objective medical evidence in the record.[2] (Tr. 12.)

At step four, after making the RFC determination, ALJ West properly determined that Plaintiff was unable to perform any of her past relevant work because her RFC limited her to sedentary work and frequent fingering.[3] (Tr. 17.) VE Meola's interrogatory responses and testimony at the supplemental hearing supports ALJ West's finding at step four. (Tr. 17, 39-44, 367-74.)

At step five, ALJ West found that Plaintiff can perform work that exists in substantial numbers in the national economy, considering her age, education, work experience, and RFC. (Tr. 17-18.) In his response to the ALJ's interrogatories, VE Meola stated that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of an order clerk, document prep worker, and scale operator. (Tr. 18, 371.) Furthermore, at the supplemental hearing, VE Meola explained that Plaintiff's ability to do those jobs would not be impacted even if she needed to take five minutes of break time every forty-five minutes, or if she was monocular. (Tr. 42.) After correctly following the five-step test, ALJ West found that Plaintiff was not disabled under the Act. There is substantial medical evidence in the record to support his decision.

---

[2] This Court notes that ALJ West's determination takes into consideration that Plaintiff cannot perform jobs that require "constant fingering." (Tr. 12, 17.)
[3] Plaintiff's past work experience required light work, heavy work, or constant fingering. (Tr. 17.)

**IV.     CONCLUSION**

Because this Court finds that ALJ West's factual findings were supported by substantial credible evidence in the record and that ALJ West's legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

                                                         s/ *Susan D. Wigenton*
                                                         **SUSAN D. WIGENTON**
                                                         **UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties